84 So.2d 454

Josephine KOERBER

v.

CITY OF NEW ORLEANS.

No. 42224.

Nov. 7, 1955.

Rehearing Denied Dec. 12, 1955.

Clem H. Sehrt, Edward J. Boyle, Dudley A. Philips, Jr., Amos L. Ponder, New Orleans, for plaintiff and petitioner.

Henry B. Curtis, City Atty., Luther E. Hall, Joseph H. Hurndon, Asst. City Atty., New Orleans, for respondent.

SIMON, Justice.

This cause comes to us on certiorari, or writ of review, to the Court of Appeal, Parish of Orleans, and involves a petitory action instituted by plaintiff, Josephine Koerber, against the City of New Orleans, claiming title to approximately four acres of land situated within the limits of the Moisant International Airport in Jefferson Parish, owned and operated by the City of New Orleans.

The City of New Orleans answered and denied the various allegations of plaintiff's petition, possession in good faith, and the prescription periods of 1, 2, 5, 10 and 30 years, respectively. Defendant also invoked the plea of waiver and estoppel, pleading alternatively that in the event plaintiff had any rights whatsoever in and to the property said rights should be limited to a claim for its market value as of the time it was taken by the City in the year 1941.

After a trial on the merits, the district court rendered judgment decreeing plaintiff the owner of the property and thus entitled to just and fair compensation therefor, its value to be determined as of September 27, 1951, the date defendant filed its answer to plaintiff's suit. All pleas filed by the defendant were dismissed, except its alternative plea recognizing its right to expropriate the property upon complying with the legal formalities and paying just and fair compensation. The case was ordered reopened for the purpose of determining and fixing the compensation to be paid.

From this judgment the defendant appealed to the Court of Appeal, Parish of Orleans, which court affirmed the judgment of the district court insofar as it decreed plaintiff the owner of the property, and in all other respects reversed and amended said judgment so as to maintain the City of New Orleans in its possession and use of the property in connection with said airport. It further relegated plaintiff to an action in damages against the City of New Orleans for the value of the property at the time of its taking for said public purpose.

Both parties applied for writs of review: the plaintiff contending in her application that the value of the property should be fixed as at the time of a *lawful* taking of the property for public purposes; the defendant contending in its application that its plea of 10-year prescription should be maintained. We refused the defendant's application for writ of certiorari because it did not disclose an adequate cause for the granting thereof. We granted the plaintiff's application.

Hence, the sole issue before us is whether the market value of the property should be fixed as of 1941 or as of 1951, or, as contended by plaintiff, as of the date of the lawful exercise of the right of eminent domain by the defendant.

It is not disputed that ownership of the property is vested in plaintiff; that the City of New Orleans believed the property formed a part of a larger tract known as the Pailet Tract which the city purchased on October 30, 1941, from the Liberty Homestead Association in liquidation for the price of approximately $50 per acre; and that the City immediately possessed, occupied and used the entire area, including plaintiff's property, and began construction of the airport thereon. Other portions of property forming a part of the airport were obtained by mesne conveyance and by expropriation suits [1] filed under the provisions of LSA-R.S. 33:4621, granting to municipalities and parishes the right to expropriate private property situated outside their corporate limits by and with the consent of the police jury of the parish in which the property is situated. However, the City of New Orleans unintentionally failed to obtain the plaintiff's property by deed translative of title or by expropriation proceedings consented to by the police jury of Jefferson Parish.

The record discloses that in January, 1946, the airport was dedicated to public use; that by letter addressed to her attorney, dated October 29, 1946, plaintiff was informed that the property to which she claimed ownership was actually located within the limits of and was being used by Moisant Airport; that plaintiff failed to judicially assert her rights of ownership or demand compensation therefor until March 25, 1949, when she first instituted a suit claiming ownership of said property, which suit she later moved to dismiss. The present suit was filed on November 21, 1949. We observe that claims of ownership were asserted by plaintiff in conversation and correspondence had between the parties beginning June, 1947.

Plaintiff contends that the court of appeal is in error in holding that the value of her property should be fixed as of 1941 since the taking thereof at that time was an unlawful taking. She urges that its value be fixed as of the time of a lawful expropriation, which plaintiff concedes is the date defendant filed its answer incorporating therein its demand for expropriation, i. e., Sep-

1. City of New Orleans v. Larroux, 1943, 203 La. 990, 14 So.2d 812.

tember 27, 1951. In support of her position, she cites the cases of New Orleans Ry. & Light Co. v. Lavergne, 138 La. 949, 70 So. 921; City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675; State v. Landry, 219 La. 721, 53 So.2d 908.

The case of New Orleans Ry. & Light Co. v. Lavergne, supra, was instituted by plaintiff for the expropriation of certain lots of ground that were low marsh land of very low value until plaintiff Company filled and reclaimed it and constructed thereon facilities for use as a railroad. In awarding damages the jury included the enhanced value occasioned by these improvements. In reducing said award, this court said [138 La. 949, 70 So. 924]:

"The jury should have allowed the defendants the market value of the land *at the time this expropriation suit was filed, without regard for the improvements put upon it by the railway company.* * * *" (Italics ours.)

In the case of City of New Orleans v. Moeglich, supra, the plaintiff sued to expropriate a small strip of land to be used for a public street. The sole issue therein was the fixing of the value of the property sought to be expropriated. As to its naked value, the parties were in full accord. But defendant contended that damages should be considered on the basis of the contemplated subdivision thereof into residential lots and placing same on the market. In fixing the value of the property, this court said [169 La. 1111, 126 So. 687]:

"It has been frequently held by this court that the criterion of value is the market value of the property at the date of the institution of the suit for expropriation, taking into consideration the use to which the property may be applied and all the uses to which it is adapted, excluding any increment of value occasioned by the proposed construction work or work of public utility for which the property is wanted. Texas Pacific [Missouri Terminal R. of New Orleans] v. Elliott, 166 La. [347] 348, 117 So. 275; Louisville & N. R. Co. v. R. E. E. De Montluzin Co., 166 La. 211, 116 So. 854.

"In the last mentioned case it was held that contemplated subsequent subdivision of property and sale of lots after expenditure of considerable sums on improvement cannot serve as basis of valuation at date of institution of expropriation suit for railroad right of way as partaking too much of character of speculation."

The State of Louisiana instituted the case of State v. Landry, supra, to expropriate a parcel of land for highway purposes. In determining the measure of damages, we said [219 La. 721, 53 So.2d 910]:

"The rule is well settled that the measure of value of property expropriated for public use is the market value of the property *at the date of institution of the expropriation suit.* * * * But since the State has delayed the trial of this case for such a long time, and elected to file separate proceedings for each parcel of ground and to dismiss its original suit, the first proceeding

is to be considered abandoned, and as though it had never been filed. * * * *Of necessity, therefore, the value of the land at the time of the filing of the second suit will control.*" (Italics ours.)

It can be readily seen, therefore, that in the cases relied upon by plaintiff the taking of the property was legally effected as of the date each expropriation suit was filed, and the value thereof was determined as of that date.

On the other hand, defendant strenuously urges that the compensation due plaintiff for the property is its market value prevailing as of the date of the actual entry, possession, occupancy and use by the defendant, or October 30, 1941. In support of its contention, defendant relies primarily upon the cases of Gumbel v. New Orleans Terminal Co., 197 La. 439, 1 So.2d 686; Jefferson & Lake Ponchartrain R. Co. v. City of New Orleans, 31 La.Ann. 478; and St. Julien v. Morgan L. & T. R. Co., 35 La. Ann. 924.

In the case of Gumbel v. New Orleans Terminal Co., supra, plaintiff filed a suit against defendant Railroad Company to recover compensation or, in the alternative, damages for use and occupancy in the land appropriated by the defendant. The suit was filed at a time when the defendant had possessed and used a portion of the land for a period in excess of thirty years for two switch tracks laid thereon without any objection or protest by the then landowner or

his vendee from whom plaintiff purchased the property. The first protest made against defendant's use of the land was made by plaintiff some thirteen years after he had acquired its ownership. Under this factual situation we held that the right of the original owner and vendor to seek recovery of compensation and damages, if any, as a result of defendant's appropriation was purely a personal right, barred by the prescription of ten years;[2] and that such right does not become invested in plaintiff as purchaser unless expressly transferred with the property, or unless the purchaser is subrogated thereto. In that instance we maintained the plea of prescription of ten years and dismissed plaintiff's demand.

In the case of Jefferson & Lake Pontchartrain R. Co. v. The City of New Orleans, supra, plaintiff, alleging its ownership, the forcible, wrongful and illegal entry upon its land by the defendant and the cutting and excavating of a drainage canal thereon, sought an injunction restraining the defendant City from using said drainage outlet, and damages as a result of defendant's wrongful, forcible and illegal act of entering upon its property. The defendant City pleaded its statutory right of entry for public purposes, the waiver of plaintiff's right to injunctive relief resulting from laches and negligence on its part, and the prescription of one and two years to the claim for damages. Firstly, we upheld the statutory right of the defendant City to

---

**2.** LSA–Civil Code Article 3544.

enter upon plaintiff's property and construct the public works complained of; secondly, because of the laches and negligence of plaintiff in asserting its rights, we denied the injunctive relief sought by it; and thirdly, we sustained the prescriptive pleas of one and two years,[3] barring the right of plaintiff to recover damages as a result of the alleged wrongful, forcible and illegal entry of defendant City.

The case of St. Julien v. Morgan L. & T. R. Co., supra, which has been termed by us as a leading case on the subject matter,[4] involved a petitory action and demand for the recovery of rents for occupancy and use of a portion of plaintiff's land for a roadbed by defendant Railway Company. It appeared that the defendant, without plaintiff's permission or consent and without purchasing or expropriating the land, constructed its railway thereon and has since continuously operated it.

We held that plaintiff, having permitted the use and occupancy of his land for the construction of public works thereon, without resistance or even complaint, could not afterwards require its demolition, prevent its use, or treat the defendant as a tenant. However, we concluded that plaintiff was not debarred from an action for damages for the taking of the land and for its value. In other words, we restricted plaintiff to his right of compensation and remitted him to this action alone. We therein stated:

"'* * * A land owner's delay in enforcing his rights does not effect a waiver of his right to prepayment; but a clear acquiescence in the company's taking possession and constructing its works, under circumstances making it his duty to resist the entry, if he intended afterwards to set up that it was illegal, will be treated as a waiver. *The waiver, however, while depriving him of the right to dispossess the company, does not deprive him of the right to damages* under the special remedy.'" (Italics ours.)

It is clearly apparent that the factual situations encountered and the relief prayed for in the above cited cases relied upon by the defendant are vastly different from that of the instant case. The legal principles as announced therein and peculiarly applied to these cases are inapposite and not applicable to the case at bar and afford defendant no comfort in its contention that the value of plaintiff's property should be fixed as of October 30, 1941, the date of the unlawful taking of plaintiff's property.

■ It has long been a fundamental principle deeply embedded in our law and jurisprudence that title to realty can not be established by waiver or estoppel; for one can never be divested of his title to realty except in the manner prescribed by law. See Snelling v. Adair, 196 La. 624, 199 So. 782; Pan American Production Co. v. Robichaux, 200 La. 666, 8 So.2d 635; Buckley

3. Civil Code Articles 3536 and 2630.

4. Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562.

v. Catlett, 203 La. 54, 13 So.2d 384; Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225; Harrell v. Stumberg, 220 La. 811, 57 So.2d 692.

In the case of Bishop v. Copeland, 222 La. 284, 62 So.2d 486, 489, we said:

" * * * the asserted inaction of plaintiffs could not constitute an estoppel as it is the firmly established jurisprudence of this court that mere silence and delay cannot effect a loss of title to property other than by the laws of prescription. * * * "

■ Accordingly, considerations of public policy, not less than the suggestions of natural justice, and under the circumstances presented in the case at bar, plaintiff cannot be permitted to reclaim the property in question, require the demolition of the public works, or prevent its use by the defendant City, being restricted only to her right to compensation for the market value of the land taken. Being in full accord with the principles announced in the cases cited and relied upon by plaintiff, and recognizing that her fee simple title had never been divested until a lawful taking thereof, we conclude that the value of said property for compensation purposes should be fixed and determined as of the date of its lawful expropriation, which is, in this instance, September 27, 1951, the date on which de-

fendant filed its answer to plaintiff's suit and therein, invoking its power to eminent domain, incorporated its suit for expropriation. We further conclude that this value should be determined without regard for the value of the improvements placed thereon by defendant City.

For the reasons assigned, the judgment of the Court of Appeal, Parish of Orleans, is reversed, set aside and annulled; and it is hereby ordered, adjudged and decreed that the judgment of the Twenty-fourth Judicial District Court be, and the same is hereby reinstated and affirmed. Costs to be borne by defendant.

PONDER, J., recused.

HAWTHORNE and McCALEB, JJ., dissent with written reasons.

McCALEB, Justice (dissenting).

I am in accord with the view of the Court of Appeal. See Koerber v. City of New Orleans, La.App., 76 So.2d 466. It appears to me that the majority err in considering this case as though it were an expropriation suit involving the taking of plaintiff's property when factually the land had long before been appropriated to public use.[1] This, of course, did not operate as a divestiture of plaintiff's title,

---

1. Hence, the cases relied on as sustaining the ruling of the court, viz., New Orleans Ry. & Light Co. v. Lavergne, 138 La. 949, 70 So. 921; City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675 and State

v. Landry, 219 La. 721, 53 So.2d 908, which merely set forth the general rule that in expropriation proceedings the value of the property is to be fixed as of the date of the expropriation suit, are clearly inapplicable.

which remains unaffected, for defendant, although vested with the power of eminent domain, did not file an expropriation proceeding but appropriated the land to a public use by building an airport thereon and, unquestionably, plaintiff has had knowledge of such appropriation for many years. It is settled by a long line of cases that, under such circumstances, the land has been burdened with a servitude created thereon by plaintiff's implied assent to the public use and that, although the city has not acquired a fee title to the property, plaintiff cannot now treat the city's occupancy as tortious, being restricted to a personal action for compensation for the value of the servitude and such other damages that she may have sustained as of the date of its establishment. See St. Julien v. Morgan L. & T. R. Co., 35 La.Ann. 924; McCutchen v. Texas & P. Ry. Co., 118 La. 436, 43 So. 42; Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562, 139 Am.St.Rep. 537; Pons v. Yazoo & M. V. R. Co., 131 La. 313, 59 So. 721; Roussel v. New Orleans Ry. & Light Co., 152 La. 517, 93 So. 758 and Gumbel v. New Orleans Terminal Co., 197 La. 439, 1 So.2d 686.

In Pons v. Yazoo & M. V. R. Co., supra, the court stated [131 La. 313, 59 So. 729]:

"Under repeated decisions, plaintiff cannot recover over and above the value of the land (now in possession of defendant for railroad use) at the time it went into the possession and use of the defendant."

In Gumbel v. New Orleans Terminal Co., it was observed [197 La. 439, 1 So.2d 689]:

"* * * The right to compensation for the value of the property taken and damages to the adjacent land is limited to the value of the portion of the property occupied *and determined as of the date when the defendant occupied and began to use the property,* and for any damages which might be done to the remainder of the property by such use." (Italics mine.)

That the above-stated rule is sound will be readily seen when consideration is given to the fact that the taking, occupancy and use of the land is not regarded as illegal in the eyes of the law, there being the establishment of a servitude thereon for public use with the implied consent and acquiescence of the owner by virtue of her long silence notwithstanding full knowledge of the appropriation. Hence, since the servitude is valid, the compensation due therefor is necessarily fixed as of the date of its creation.

I respectfully dissent.

HAWTHORNE, Justice (dissenting).

The majority opinion appears to be based on the premise that the City of New Or-

leans lawfully expropriated the property involved here when it filed its answer in this suit on September 27, 1951, and incorporated in that answer its demand for expropriation. This reasoning completely overlooks the fact that the City of New Orleans actually took possession of the property in 1941 when the City bought the Pailet Tract, which was thought to include the land in dispute here, and immediately possessed and used the entire area, including plaintiff's property, and began construction of the airport thereon.

If the City of New Orleans possessed the power in the instant case to expropriate plaintiff's property for airport purposes and is not a trespasser, it is my view that the judgment of the Court of Appeal, 76 So.2d 466, relegating plaintiff to an action in damages for the value of the property at the time of its taking for public purposes is correct and is supported by the following cases and the authorities cited therein: St. Julien v. Morgan's Louisiana & T. Railroad Co., 35 La.Ann. 924; Pons v. Yazoo & M. V. R. Co., 131 La. 313, 338, 59 So. 721; Roussel v. New Orleans Ry. & Light Co., 152 La. 517, 93 So. 758; Gumbel v. New Orleans Terminal Co., 197 La. 439, 1 So.2d 686.