HOOD, Judge.
William Jefferson Grimble sues the Rap-ides Parish Police Jury for damages resulting from the construction of a canal across his land, and for the value of the property which defendant allegedly appropriated for that purpose. Judgment was rendered by the trial court in favor of plaintiff for $300.00. Plaintiff appealed.
The issues presented are whether plaintiff’s claim for damages has prescribed, whether plaintiff sustained damages as a *837 result of the construction of the canal, and whether the award made by the trial court for the value of the property taken is adequate.
Prior to 1950 plaintiff owned a 15 acre tract of land in Rapides Parish which he used for grazing cattle and for raising corn, cotton and other crops. In 1949 he moved to Houston, Texas, and for several years thereafter he resided in that city with his daughter.
During the year 1950, while Grimble was in Houston, defendant dug a ditch or drainage canal on the north part of his property. Plaintiff alleges, and the evidence indicates, that the culverts under a road which bordered on plaintiff’s land were not large enough to take care of the increased flow of water which resulted from the digging of this ditch, and that a part of plaintiff’s property was subjected to periodic flooding for several years after 1950. The evidence does not show how much of plaintiff’s land overflowed, how often the flooding occurred, the length of time required for the water to drain off or the effect which the flooding may have had on the market value of all or any part of his property. The defect in the drainage was corrected sometime before the case was tried in 1974.
Prior to digging the canal, the defendant Police Jury obtained a “Right of Way Grant,” dated April 21, 1950, which purported to authorize defendant to construct and maintain drainage facilities through plaintiff’s property. That document was executed by “Jeff Grimble per Bessie Mae Culbert.” Plaintiff concedes that Bessie Mae Culbert was his daughter, and that she was living on his 15 acre tract of land when the above right of way deed was executed and while plaintiff was living in Houston. He stated that she died in 1966. Grimble denies, however, that his daughter actually signed the above document or that he ever authorized her to sign it for him.
The evidence fails to show that Bessie Mae Culbert had authority to sign the right of way deed for Grimble. We conclude, therefore, that defendant did not acquire a valid easement or servitude from the plaintiff. No one suggests, and there is nothing in the record to indicate that defendant acted in bad faith in constructing the canal. We find that defendant was in good faith in believing that it had a valid right of way when it dug the canal.
Plaintiff instituted this suit on April 11, 1972. He alleges in his original petition that the canal was dug without his permission, that the flooding of his land prevented him from farming it for 21 years, and that he is entitled to recover damages for his alleged loss of earnings during that 21 year period. Defendant filed an exception of prescription of one year. Plaintiff thereupon amended his petition alleging that his land was “wrongfully expropriated,” and he demanded judgment for the value of the property taken in addition to the damages previously claimed. Defendant answered, denying all of the material allegations in the original and amended petitions. The plea of prescription of one year was referred to the merits, and the case then was tried.
The parties stipulated that defendant had “expropriated” only 0.37 of an acre of plaintiff’s property for the above canal, and that his property had a value of $300.-00 per acre at the time of the taking. The trail judge refused to permit evidence as to the present value of plaintiff’s property, but Grimble was permitted to make an “offer of proof” which indicated that the land had increased in value since the taking, and that it was worth $1,000.00 per acre by the time the case was tried.
Judgment was rendered by the trial judge in favor of plaintiff for $300.00. No reasons for judgment were assigned, and the record does not show whether the exception of prescription was ruled on by the trial court, or whether the award was made for damages resulting from the construction of the canal or to cover the value of the property taken.
*838 Defendant contends on this appeal that the action filed by plaintiff has been barred by prescription of two and ten years, under LSA.-R.S. 9:5624 and LSA-C.C. art. 3544. Defendant did not plead the prescriptions of two and ten years to any of plaintiff’s claims, and it apparently has abandoned its plea of prescription of one year. We thus have not considered defendant’s arguments relating to prescription.
We have concluded, however, that the evidence fails to establish that plaintiff sustained any damages as a result of the digging of the canal or the periodic flooding of a part of his property. The evidence tending to show that plaintiff sustained damage consisted of his own testimony, that of a member of the Police Jury and some photographs.
Mr. Charles P. DeVanie, Jr., a member of the defendant Police Jury, stated that there had been some “water problems” in that area of the parish, but that they had been corrected. He did not know whether plaintiff’s land had ever flooded. When asked whether the water problem had ever deprived Grimble of some use of his land, he replied:
“Uh — he said so. I just take his word for it. I mean, I — I couldn’t go back in there because at the time the water was up. But now it was not flowing over the property. At one time, it had come up to the road and flowed over the road, trying to get out, but this was right at the road itself, within (100) feet of the road.”
Although Mr. DeVanie conceded that there had been some “water problems” in that area, his testimony does not show that plaintiff’s land ever flooded or that the water problem ever prevented him from farming any part of his property.
Grimble’s testimony was confusing and was difficult to understand. We gather from it, however, that plaintiff moved to Houston in 1949, and began working at a “ship job” there. He returned to Rapides Parish every March or April, however, to “seed” his land, or to farm it, and he said that he did that each year up to and including 1972. He moved back to Rapides Parish sometime before the case was tried, and we assume that he resumed living there before this suit; was filed. Plaintiff observed, and he thus had knowledge of the fact, that the canal had been dug on his property very shortly after the construction was completed. No legal action relating to the canal was taken until this suit was filed 22 years later. Although Grimble stated that his land was rendered useless by flooding, he nevertheless came back to “seed” or to farm it every spring while he was living and working in Houston which covered a period of about 21 years.
Grimble testified that he sold parts of his property to three different purchasers after the canal was dug in 1950, and that he owned only eight acres at the time of the trial. He stated that two of those sales, to Chenevert and to Whitley, were made because the land conveyed to those purchasers was under water and thus was useless. According to his testimony, however, each of those sales involved the transfer of one acre of his parent tract, for a consideration of $300.00, which price was the stipulated value of the property per acre before the canal was constructed. It is apparent, therefore, that the alleged flooding did not decrease the value of the parts of his property which we assume was affected the most by the water. The third sale was forced because of an indebtedness owed by plaintiff which he was unable to satisfy in any other way.
Plaintiff claims that the flooding of his land caused him to lose $1,000.00 per year, for 21 years, making a total loss of $21,000.00. He itemizes his crop losses each years as follows :
(a) 10 bales of cotton $300.00
(b) 300 bushels of corn 400.00
(c) Truck farming 300.00
*839 His general estimates of his crop losses are not supported by any other evidence. No income tax returns, no receipts, no documents of any kind and no testimony tending to confirm his estimates were offered. We also find that his testimony is conflicting in several respects. He testified, for instance, that he never sold any of his corn, but instead he fed it to his horses. He claims no income from the use of the horses, but if he used them for his cotton and truck farming then it would appear that the cost of feeding the horses alone consumed most of the total earnings of his other operations. There thus is no merit to his claim for $400.00, representing the loss of his corn crop.
Although he claims to have lost ten bales of cotton each year, his maximum allotment was only four acres of land for cotton, and he testified that his best crops did not yield over one bale per acre, and that the gross selling price of cotton was from $50.00 to $55.00 per bale. There is no evidence to support his general statement that he lost $300.00 per year from truck farming. His testimony also does not convince us that he could or would have farmed his property while he was living in Houston. He makes no claim for loss of rents or any other income from the land.
Our conclusion is that the evidence fails to show that plaintiff suffered any loss of income or damage as a result of the construction of the canal on his property in 1950.
Plaintiff contends that he is entitled to recover the value of the property taken, computed as of the time of the trial, rather than as of the time of the taking or the time he had knowledge of such taking.
The applicable rule is that where the landowner had knowledge of the taking he is entitled to recover the value of the property appropriated, computed as of the date of the taking. Where the property is taken without the knowledge of the landowner, however, then the value should be fixed as of the date the latter gained knowledge of the taking. Cruell v. Jefferson Parish, 216 So.2d 604 (La.App. 4 Cir. 1969); Veillon v. Columbia Gulf Transmission Co., 192 So.2d 646 (La.App. 3 Cir. 1966); A. K. Roy, Inc. v. Board of Com’rs for Pontchartrain L. D., 238 La. 926, 117 So.2d 60 (1960); Gumbel v. New Orleans Terminal Co., 197 La. 439, 1 So.2d 686 (1941).
In the instant suit, the evidence indicates that plaintiff had knowledge of the taking at the time or very slightly after the canal was constructed in April, 1950. His testimony is that he farmed the property every year, including the year 1950, and that he saw the canal when he came to “seed” the property. The value of the property taken, therefore, must be computed as of the time of the taking.
The case of Koerber v. City of New Orleans, 228 La. 903, 84 So.2d 454 (1955), is not controlling, for the reasons which were assigned by the Supreme Court in A. K. Roy, Inc. v. Board of Com’rs for Pontchartrain L. D., supra.
Defendant appropriated 0.37 of an acre of plaintiff’s land. The land had a value of $300.00 per acre at the time of the taking. The value of the property taken thus was $111.00. Defendant has not appealed or answered the appeal, however, so the award to plaintiff cannot be reduced. Since we cannot reduce the award to plaintiff, it is unnecessary for us to consider defendant’s additional argument that it acquired a servitude of drainage by prescription of ten years, under LSA-C.C. arts. 727, 728 and 765, and that it thus is not obliged to compensate plaintiff for that right.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.